619 So.2d 1220 (1993)
Valrie DOMINGUE, Jr., et al., Plaintiffs-Appellants,
v.
RELIANCE INSURANCE CO., et al., Defendants-Appellees.
No. 92-1233.
Court of Appeal of Louisiana, Third Circuit.
June 2, 1993.
*1221 Glenn John Armentor, for Valrie Domingue.
George Robert Privat, David Arthur Hurlburt, for Greer Consultants, et al.
M. Charles Brandt Jr., for Davidson of Louisiana.
Charles M. Jarrell, for Bituminous Cas. Corp.
D.C. Panagiotis, for Reliance Ins.
M. Candice Hattan, for Allstate Ins.
Richard Joseph Petre Jr., Chris Gerard Robbins, for Kyle Greer.
Before GUIDRY and WOODARD, JJ., and CULPEPPER, J. Pro Tem.
GUIDRY, Judge.
This is a personal injury suit arising from a June 8, 1989 automobile accident in which plaintiff, Valrie Domingue, was rear-ended by an automobile owned by Greer Consultants, Inc. and driven by Kyle Greer. The case has not yet been tried on its merits. It is before this court on appeal of two summary judgments granted by the trial court, i.e., (1) the grant of summary judgment in favor of Reliance Insurance Company, defendants' excess liability umbrella insurer, and (2) the dismissal of the intervention petition of plaintiff's employer, Davidson of Louisiana, Inc. We affirm.
On April 9, 1990, Domingue sued Kyle Greer, Greer Consultants, and Allstate Insurance Company, the insurer of the Greer automobile. Bituminous Casualty Corporation, Davidson's worker's compensation insurer, intervened in the suit seeking to recoup compensation benefits and medical expenses paid to and on behalf of Domingue. By first supplemental and amending petition, Domingue's wife Guynethe was added as a party plaintiff seeking recovery for her alleged loss of consortium. Davidson then intervened in this matter for recovery of income allegedly lost because of Domingue's inability to work during his convalescent period. The plaintiffs then added as defendant Pelican State Mutual Insurance Company (PSMIC), which they alleged also insured the Greer automobile.
In response to Davidson's intervention, defendants filed an exception of no right and/or no cause of action and, alternatively, a motion for summary judgment. By judgment rendered September 16, 1991 and signed October 18, 1991, the trial court dismissed Davidson's claim with prejudice. In doing so, the trial judge did not specify whether his judgment of dismissal was based on one of the exceptions or the motion for summary judgment. Davidson appealed.
On March 10, 1992, plaintiffs' third supplemental and amending petition added Reliance as an additional insurer of Greer Consultants. PSMIC then filed a motion for summary judgment denying coverage because its policy only covered Greer Consultants for "hired" and "non-owned" vehicles. On May 20, 1992, Reliance filed the motion for summary judgment at issue urging that its policy only provided coverage in excess of the first million dollars of liability. In the event that the underlying insurance either excluded or, for some other reason, did not provide coverage, Reliance argued that its coverage should not be *1222 made to "drop down" and provide coverage for any part of the initial million dollars of liability. During the hearing on Reliance's motion for summary judgment, plaintiffs stipulated that their damages did not exceed one million dollars.
Reliance principally urged the applicability of the following section of its policy to deny coverage:
II LIMITS OF LIABILITY: Regardless of the number of persons and organizations who are Insureds under this Policy and regardless of the number of claims made or suits brought against any or all Insureds, the Company's liability is limited as follows:
With respect to personal injury, property damage or advertising injury, or any combination thereof, the Company's liability shall be only for the Ultimate Net Loss in excess of the Retained Limit defined as the greater of:

(a) an amount equal to the Limit of Liability indicated beside the Underlying Insurance listed in the attached Schedule of Underlying Insurance (whether collectible or not), plus the applicable limits of any other underlying insurance collectible by the Insured, or

(b) The amount stated as the Insured's Retained Limit in the Declarations because of personal injury, property damage or advertising injury not within the terms of the coverage of the underlying insurance listed in the Schedule of Underlying Insurance,
and then for an amount not exceeding the amount specified in the Declarations as the Company's Limit of Liability arising out of any one Occurrence. (Emphasis ours)
The Schedule of Underlying Insurance lists "Underlying Insurance" referred to in paragraph (a) above as $1,000,000 to be provided by Continental Insurance. The "Insured's Retained Limit" referred to in paragraph (b) above is stated in the declarations as $10,000. Although the schedule shows Continental as the contemplated underlying insurer, Greer Consultants was forced to look elsewhere for underlying primary insurance when Continental refused to provide coverage. PSMIC agreed to provide such underlying coverage, but only for "hired" and "non-owned" vehicles.
Reliance also contended that the following two sections of the policy preclude coverage thereunder:
CONDITIONS.
* * * * * *
(15) MAINTENANCE OF UNDERLYING INSURANCE: It is warranted by the Insured that the Underlying Policy or Policies listed in the Schedule of Underlying Insurance, or renewals or replacements thereof are not more restrictive in coverage or limits of liability, shall be maintained in force during the currency of this Policy, except for any reduction in the aggregate limit listed in the Schedule of Underlying Insurance solely by payment of claims in respect of Occurences to which this Policy applies. In the event of failure by the Insured to so maintain such Policy or Policies in force the insurance afforded by this Policy shall apply in the same manner it would have applied had such Policy or Policies been so maintained in force.

In the event there is no recovery available to the Insured as a result of insolvency of the Underlying Insurer or by reason of the Insured having breached the contract of Underlying Insurance, the coverage hereunder shall apply in excess of the applicable Limit of Liability specified in Schedule of Underlying Insurance. (Emphasis ours)

FOLLOWING FORM AUTOMOBILE [Endorsement]
It is agreed that no coverage is provided by the policy for claims, suits, actions, or proceedings against the insured arising out of automobile liability unless coverage is provided by applicable underlying insurance having limits as described in the Schedule of Underlying Insurance.
Both the PSMIC and Reliance motions for summary judgment were heard on June 1, 1992. The trial court first granted PSMIC summary judgment because the vehicle driven by Kyle Greer was indisputably *1223 owned by Greer Consultants and the PSMIC policy only provided coverage for "hired" and "nonowned" vehicles. Thus, the underlying insurance was found to not provide coverage. This judgment has not been appealed and is now final. The trial court then granted Reliance's motion for summary judgment.
From this judgment, Kyle Greer and Greer Consultants, defendants, Bituminous Casualty, intervenor, and Valrie and Guynethe Domingue, plaintiffs, appealed. In addressing the contentions of the appellants, we shall first discuss the summary judgment rendered in favor of Reliance. Thereafter, we will discuss the dismissal of Davidson's intervention.

SUMMARY JUDGMENT
Appellants contend that the Reliance policy's "Limits of Liability" section is ambiguous and should properly be construed to cover liability exceeding $10,000, not $1,000,000. They argue that paragraph (b) of that section should control the level at which the Reliance policy begins to provide coverage. Additionally, appellants argue, as we understand, that so long as underlying insurance was maintained by Greer, the coverage afforded by Reliance's policy is triggered, irrespective of the restrictions on coverage of the underlying insurance. We find these arguments unpersuasive.
A motion for summary judgment is properly granted only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that mover is entitled to judgment as a matter of law. La.C.C.P. art. 966(B); Vermilion Corporation v. Vaughan, 397 So.2d 490 (La.1981). We note that there are no material facts in dispute in this case. The only issue is the proper interpretation of the insurance contract. Radar v. Duke Transportation, Inc., 492 So.2d 532 (La.App. 3rd Cir.1986). When the language of an insurance policy is clear and unambiguous, a reasonable interpretation consistent with the obvious meaning and intent of the policy must be given. Alford v. Kaiser, 589 So.2d 546 (La.App. 1st Cir.1991), writ denied, 594 So.2d 893 (La.1992). A dispute as to the issue of whether, as a matter of law, the language of an insurance policy provides coverage to a party, can properly be resolved within the context of a motion for summary judgment. Garcia v. Certified Lloyds Insurance Company, 598 So.2d 1278 (La.App. 4th Cir.1992), writ denied, 604 So.2d 969 (La.1992); Pridgen v. Jones, 556 So.2d 945 (La.1992).
Whether an excess policy provides excess coverage or "drops down" to provide all or a portion of primary coverage is to be determined according to the provisions of the excess policy. Louisiana Insurance Guaranty Association v. International Insurance Company, 551 So.2d 50 (La.App. 1st Cir.1989), citing Gibson v. Kreihs, 538 So.2d 1057 (La.App. 4th Cir. 1989), writ denied, 541 So.2d 856 (La.1989). The Reliance policy provisions are clear and unambiguous. The limits of liability section states that Reliance's coverage shall apply after liability reaches the greater of (a) the liability limit indicated in the schedule of underlying insurance (in this case $1,000,000) or (b) the declared insured's retained limit for liability not within the terms of coverage of the underlying insurance (in this case $10,000). Clearly, the greater amount is provided in relation to paragraph (a), $1,000,000. This is the point at which Reliance's excess coverage begins to apply. Given the clear wording of the insurance policy, we conclude that the trial court did not err as a matter of law in holding that Reliance's excess coverage did not "drop down" below the first $1,000,000 of liability for damages. The maintenance of underlying insurance condition and the following form automobile endorsement, both of which apply to the entirety of the Reliance policy, mandate this result. First, the maintenance condition requires that the insured, Greer Consultants, maintain underlying insurance that is "... not more restrictive in coverage ..." than the Reliance policy. An examination of the primary coverage policy provided by PSMIC reveals that it only covered "hired" and *1224 "non-owned" vehicles. This coverage is certainly more restrictive than the Reliance policy which provides more expansive terms of coverage including vehicles owned by Greer Consultants. The insured failed to comply with this maintenance condition. As a consequence, the excess policy applies "... in the same manner it would have applied had such Policy or Policies been so maintained in force". In other words, the excess policy provides coverage only for loss beyond the first $1,000,000 of damages. Secondly, the following form automobile endorsement would preclude coverage completely because, as the court ruled, the PSMIC underlying insurance policy did not provide coverage.
The trial court correctly determined, as a matter of law, that the Reliance policy provided coverage only in excess of $1,000,000 and did not "drop down" to cover any of the primary liability. Given the fact that plaintiffs stipulated that the total amount of their damages did not exceed $1,000,000, summary judgment dismissing Reliance as a party defendant was proper.

NO CAUSE OF ACTION
The trial court, without specifying the basis of its ruling, dismissed Davidson's claim for its loss of profits which resulted from Domingue's inability to work. Davidson urges on appeal that this element of damages should be recoverable.
It is well settled that La.C.C. art. 2315 does not encompass a cause of action in favor of a third party for indirect economic loss caused by a tortfeasor's negligent conduct. PPG Industries, Inc. v. Bean Dredging, 447 So.2d 1058 (La.1984). A corporation cannot recover damages from a tortfeasor resulting from an employee's injuries. Such injuries are too remote, speculative, and indirectly consequential of the accident to be the subject of an action ex delicto. Peterson v. Western World Insurance Company, 491 So.2d 78 (La.App. 1st Cir.1986); Baughman Surgical Associates, LTD v. Aetna Casualty and Surety Company, 302 So.2d 316 (La. App. 1st Cir.1974). It is clear that Davidson does not have a cause of action for recovery of this indirect economic loss. As such, the trial court did not err in dismissing Davidson's suit.

DECREE
The judgment of the trial court is affirmed. Costs of these proceedings are assessed to the appellants, Kyle Green, Greer Consultants, Inc., Bituminous Casualty Corporation, Valrie Domingue, Guynethe Domingue, and Davidson of Louisiana, Inc.
AFFIRMED.