**David Neal JUDD, Petitioner–Appellant,**

**v.**

**Benjamin F. BAER, Chairman, United States Parole Commission, Joseph S. Petrovsky, Warden, United States Penitentiary/Atlanta, Respondents–Appellees.**

**No. 89–8867**
**Non–Argument Calendar.**

United States Court of Appeals,
Eleventh Circuit.

Sept. 7, 1990.

Amy Berne Kaminshine, Atlanta, Ga., for respondents-appellees.

David Neal Judd, pro se.

---

Before TJOFLAT, Chief Judge, and FAY and JOHNSON, Circuit Judges.

PER CURIAM:

This case presents the novel question of whether the failure of the National Appeals Board of the Parole Commission (NAB) to render a decision within sixty days of receipt of an appeal, as mandated by Title 18 U.S.C. sec. 4215(b), creates an entitlement to habeas relief on the part of the prisoner or parolee awaiting the decision. We answer this question in the negative and AFFIRM the district court's dismissal of appellant's petition for habeas corpus.

Appellant David Neal Judd pled guilty to charges of conspiring to import and possess marijuana with intent to distribute and importing and possessing marijuana with intent to distribute. He was sentenced to 10 years imprisonment followed by twenty years of special parole. He is currently incarcerated in the Federal Prison Camp in Atlanta, Georgia. Judd had his first parole hearing on April 26, 1988, in which a panel of United States Parole Commission (USPC) hearing examiners recommended that he serve 60 months before being released on parole. The Regional Commissioner, under the authority of 28 C.F.R. § 2.24(b)(2),[1] modified the recommendation of the hearing panel and ordered that Judd serve 64 months before parole. Judd received notification of the Regional Commissioner's determination in a notice of action dated May 19, 1988. Judd appealed the Regional Commissioner's decision to the NAB on June 14, 1988, and the NAB received his appeal on June 24, 1988.

Title 18 sec. 4215(b) provides that "[t]he National Appeals Board, upon receipt of the appellant's papers, must act pursuant to rules and regulations within sixty days to reaffirm, modify, or reverse the decision and shall inform the appellant in writing of the decision and the reasons therefor." 18 U.S.C. § 4215(b) (1988).[2] Thus the NAB should have decided Judd's appeal by August 23, 1988. This the NAB failed to do. On September 6, 1988, 74 days after the NAB had received the appeal, Judd filed a motion for habeas corpus with the district court for the Northern District of Georgia. In that motion, Judd contended that in the absence of any timely decision by the NAB, his allegations in his appeal to the NAB stood undisputed and entitled him to immediate parole. He further asserted that any subsequent response by the NAB should be dismissed for untimeliness. The district court entered an order dated September 28, 1988 directing the Chairman of the USPC and the warden of Judd's prison camp, respondents-appellees in this case, to file a response to Judd's motion within 20 days.

On September 22, 1988, however, the NAB had issued a notice of action affirming the decision of the Regional Commissioner in Judd's case. Thus when the appellees responded to Judd's petition, they argued that the decision by the NAB had mooted the issue. Alternatively, appellees maintained that habeas was an inappropriate form of relief and that a writ of mandamus would better serve Judd's situation. Judd filed a traverse contesting the arguments raised by appellees. All the documents were submitted to the magistrate. In his report and recommendation, the magistrate analogized Judd's situation to cases in which parole revocation hearings took place after the time period required by statute. The magistrate noted that habeas relief was obtained only when the delay was unreasonable and caused prejudice to the petitioner; otherwise the petitioner had the right to a mandamus action only. Finding that the delay had not been unreason-

---

1. "[A] Regional Commissioner may ... [o]n his own motion, modify the recommendation of a hearing examiner panel to bring the decision to a date not to exceed six months from the date recommended by the examiner panel[.]" 28 C.F.R. § 2.24(b)(2) (1989).

2. Section 4215 was repealed by the Act of October 12, 1984 (Act), Pub.L. No. 98–473, sec. 218(a)(5), 1984 U.S.Code Cong. & Admin.News (98 Stat.) 1837, 2027. It remains applicable, however, through November 1, 1992 to individuals convicted of offenses prior to November 1, 1987. Act, Pub.L. No. 98–473, § 235(b)(1)(A), 1984 U.S.Code Cong. & Admin.News (98 Stat.) at 2032. Judd entered his plea on November 26, 1986.

able, that defendant had not been prejudiced thereby, and that the NAB had rendered its decision on Judd's appeal, the magistrate held that the matter was moot and recommended that the petition for habeas corpus be dismissed. Judd filed his objections to the magistrate's report with the court. After reviewing the report and recommendations and Judd's objections, the district court approved and adopted the report and recommendations as the order of the court and dismissed Judd's habeas petition.

We agree with the recommendations of the magistrate and the order of the district court.[3] Judd argues to this court that his case is not moot because the gravamen of his petition is not the mere absence of a decision by the NAB, but rather the deprivation of his due process right and liberty interest, allegedly created by the enactment of section 4215(b), caused by the untimeliness of the decision. The case law cited by Judd, however, does not support his explication of the import of the statute.

■ For his liberty interest, Judd relies on the Supreme Court opinion *Hewitt v. Helms*, 459 U.S. 460, 103 S.Ct. 864, 74 L.Ed.2d 675 (1983), in which the Court held that "[o]n balance we are persuaded that the repeated use of explicitly mandatory language in connection with requiring specific substantive predicates demands a conclusion that the State has created a protected liberty interest." *Id.* at 472, 103 S.Ct. at 871. Judd points to the words of the statute ordaining that the NAB *"must* act ... within sixty days" and *"shall* inform the appellant in writing" to derive a "protected liberty interest" in having the statutory

procedures strictly followed. *Id.;* 18 U.S.C. § 4215(b) (emphasis added). In *Hewitt* and the myriad cases that followed it, however, the mandatory language surrounded some express freedom or privilege that could not be withdrawn without the precise procedures being followed. *See, e.g., Hewitt* (liberty interest in remaining with general prison population rather than in administrative segregation); *Barfield v. Brierton*, 883 F.2d 923 (11th Cir.1989) (liberty interest in remaining at youthful offender institution rather than maximum security prison); *Sheley v. Dugger*, 833 F.2d 1420 (11th Cir.1987) (per curiam) (liberty interest in being returned to general prison population as soon as need for segregation passes). The language of section 4215(b) creates no such liberty for Judd. No grant or withdrawal of any entitlement is expressly conditioned upon the NAB's timely rendering of its decision. We do not discern any violation of Judd's liberty rights by the untimely decision of his appeal.

■ With regard to the alleged violation of Judd's due process rights, only one appellate court opinion addresses an NAB failure to abide by the mandate of section 4215(b). Because the Eighth Circuit in *United States v. Horn Bear*, 887 F.2d 897 (8th Cir.1989), found that the NAB's delay was reasonable and the timing of the decision in substantial compliance with the statute, that court did not reach the issue of the appropriate remedy. This court has similarly analyzed USPC violations of other mandatory time limits set out in chapter 311 of Title 18.[4] *See, e.g., Sacasas v. Rison*, 755 F.2d 1533 (11th Cir.1985) (per cu-

---

**3.** We except from our concurrence of opinion with the district court the district court's erroneous assertion that the repeal of section 4215(b) applies to Judd's case.

**4.** Chapter 311 of Title 18 contains sections 4201 through 4218. Section 4214(c) provides that alleged parole violators who are summoned or retaken by warrant under certain circumstances *"shall* receive a revocation hearing within ninety days of the date of retaking" and *"shall* have notice of such hearing, be allowed to appear and testify on his own behalf, and, unless waived, *shall* have counsel or another representative." 18 U.S.C. § 4214(c) (1988) (emphasis added). Section 4214(b)(1) mandates the Com-

mission to review a detainer warrant placed against parolee serving time for an offense committed while on parole within 180 days of notice to the Commission of the detainer; the statute further directs that the parolee "shall" have notice of the pending review, opportunity to submit written information related to the disposition of the detainer, and the assistance of counsel. Section 4211(c)(1) in similarly mandatory language affords a parolee freedom from supervision five years after release unless the USPC holds a hearing and determines that supervision should not end because it is likely that the parolee will engage in criminal conduct.

riam) (violation of 5–year limit of § 4211(c)(1)); *Carlton v. Keohane*, 691 F.2d 992 (11th Cir.1982) (per curiam) (violation of 180–day limit of § 4214(b)(1)) *Goodman v. Keohane*, 663 F.2d 1044 (11th Cir. 1981) (per curiam) (violation of 90–day limit of § 4214(c)); *Frick v. Quinlin*, 631 F.2d 37 (5th Cir.1980) (violation of § 4214(c)); *Lambert v. Warden, United States Penitentiary*, 591 F.2d 4 (5th Cir.1979) (per curiam) (violation of § 4214(b)(1)); *Smith v. United States*, 577 F.2d 1025 (5th Cir.1978) (violation of § 4214(c)).[5] "Any delay requires a two-step inquiry to determine if [petitioner] is entitled to relief. First, the delay, considering all of the circumstances, must be unreasonable. Second, the delay must be prejudicial." *Smith*, 577 F.2d at 1027. If in fact the court finds the delay unreasonable but not prejudicial, this circuit has rejected habeas relief as an inappropriate remedy. Although specifically referring to violations of section 4214(c), we find the following language from *Smith* instructive:

There are several reasons why [habeas] relief is not appropriate in this case.

*First*, we note that where Congress has intended for the courts to apply such a draconian remedy, it has specifically authorized such action [e.g. speedy trial violations]....

*Second*, the legislative history of the Parole Commission and Reorganization Act makes clear that Congress did *not* intend the courts to release a parolee for a violation of the 90–day hearing requirement....

*Third*, the two-step analysis employed by cases decided prior to the Act's passage supports the denial of relief absent prejudice. Under those cases there had to be first a showing that the delay was unreasonable, and then a showing of prejudice. Section 4214(c) goes only to the first step of the analysis: delay beyond the statutorily mandated 90 days is unreasonable. The Act has no bearing, however, on the required showing of

prejudice in addition to the showing of unreasonableness.

*Fourth*, § 4214(c) is not rendered meaningless by requiring a showing of prejudice for a parolee's release when a revocation hearing is held beyond the 90–day period mandated by the Act, as argued by Smith. Such requirement does not then give a statutory right without a remedy. The statute makes definite that which was theretofore indefinite. The Commission, parolees, and the courts all now know the time within which the hearing should be held. The Commission makes every effort to comply in good faith with congressional directives and now knows definitely what is required. Indeed, the Commission gave Smith a hearing as soon as he called the Commission to task for not complying with the statute. The Act does provide a way for a parolee to obtain that to which he now knows he is entitled. Section 4214(c) enables a parolee to go into court and force the Parole Commission to hold a revocation hearing within 90 days.

*Id.* at 1028–29.

We find the reasoning of *Smith* persuasive in this case. Congress has determined that delays of over 60 days in deciding appeals to the NAB are unreasonable; however, we do not see that Judd suffered any prejudice by the delay. Congress has not prescribed habeas relief as a remedy for violations of the time limit in section 4215(b). The legislative history of the Parole Commission and Reorganization Act referred to in *Smith* indicating that habeas relief was not available for violations of the statutory deadlines applies equally to section 4215(b). Finally, under section 4215(b), the petitioner is correspondingly empowered to "go into court and force the [NAB] to [render a decision] within [60] days." *Smith*, 577 F.2d at 1029. Thus the appropriate action for Judd to have taken was to have petitioned the district court for a writ of mandamus. At this point, however, Judd has been in receipt of the NAB's

---

**5.** The Eleventh Circuit in *Bonner v. City of Prichard*, 661 F.2d 1206, 1207 (11th Cir.1981) (en banc), adopted as precedent decisions of the former Fifth Circuit rendered prior to October 1, 1981.

decision on his appeal for 21 months. The issue is moot.

We AFFIRM the order of the district court.