**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**APR 6 2000**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

JAMES REED HARRIS,

      Plaintiff-Appellant,

v.

JOHN HURLEY,

      Defendant-Appellee.

No. 99-1382

(D.C. 98-S-1351)
(D. Colo.)

---

**ORDER AND JUDGMENT** *

---

Before **BALDOCK, HENRY** , and **LUCERO** , Circuit Judges.

---

After examining the briefs and appellate record, this panel has determined

unanimously that oral argument would not materially assist the determination of

this appeal. See Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is

therefore ordered submitted without oral argument.

James Reed Harris, proceeding pro se, appeals the district court's order

---

* This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel. The court
generally disfavors the citation of orders and judgments; nevertheless, an order
and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

1

dismissing his petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241. The court accepted the report and recommendation of the magistrate judge and concluded that Mr. Harris had failed to establish that the calculation of his sentence violated the Ex Post Facto, Double Jeopardy, or Due Process Clauses of the Constitution. For the reasons set forth below, we affirm the district court's decision.

## I. BACKGROUND

In October 1988, Mr. Harris pleaded guilty to armed bank robbery (a violation of 18 U.S.C. § 2113 (a) and (d)) and unlawful use of a firearm (a violation of 18 U.S.C. § 924(c)) in the United States District Court for the Western District of Washington. That court sentenced him to a twenty-five year term of imprisonment on the § 2113 charge and a five year consecutive term on the § 924(c) charge. The court concluded that the Sentencing Guidelines did not apply to the bank robbery charge but did apply to the firearm charge. As a result, Mr. Harris was eligible for parole on the former sentence but not the latter one.

When Mr. Harris was sentenced, a policy of the United States Bureau of Prisons provided that a § 924(c) sentence must be served before another term of imprisonment. That policy was based in part on the language of the statute, which states that a § 924(c) sentence may not run concurrently with any other

term of imprisonment, see 28 U.S.C. § 924(c)(1)(D)(ii), and in part on the statute's legislative history. The Senate Report accompanying the 1984 amendment to § 924(c), states: "[T]he Committee intends that the mandatory sentence under the revised subsection 924(c) be served prior to the start of the sentence for the underlying or any other offense." United States v. Gonzales, 520 U.S. 1, 6 (1997) (quoting S. Rep. No. 98-225, 313-14 (1983), reprinted in 1984 U.S.C.C.A.N. 3182, 3492) (citation in original)).

Accordingly, under the Bureau of Prisons' method of calculating Mr. Harris's sentences, he would first serve the five year term on the § 924(c) charge. Because that sentence was imposed pursuant to the Guidelines, he would not be eligible for parole. Then, he would serve the twenty-five term on the § 2113 charge, and he would be eligible for parole on that sentence.

In December 1996, the Bureau of Prisons informed Mr. Harris that he would first be eligible for parole on the § 2113 charge on March 4, 2001. See Rec. doc. 2, Ex. 3. In March 1998, Mr. Harris requested additional information about his sentence. See id., Ex. 5. The Bureau of Prisons informed him that he had completed serving his § 924(c) sentence on November 4, 1992 and had begun to serve his § 2113 sentence. The Bureau again informed him that he would first be eligible for parole on March 4, 2001. See id., Ex. 4.

Mr. Harris then filed an administrative complaint challenging the

3

calculation of his sentence. He argued that he had wrongly been required to serve the § 924(c) sentence first. As a result, he maintained, he had been denied a parole hearing on the § 2113 sentence. He contended that he should, therefore, be released from the remainder of his sentence. See id., Ex. 6 (Request for Admin. Remedy, filed Mar. 24, 1998).

In response, the Bureau of Prisons informed Mr. Harris that it had recalculated his sentence so that he would serve the twenty-five year sentence on the § 2113 charge before the five year sentence on the § 924(c) charge. The Bureau based its new calculation on the Supreme Court's decision in Gonzales, 520 U.S. at 6-8. See Rec. doc. 2, Ex. 6 (Response, dated Apr. 9, 1998).

In Gonzales, the Supreme Court held that the provision of § 924(c) prohibiting the imposition a sentence concurrent with "any other term of imprisonment" applied to state as well as federal sentences. In reaching that decision, the Court discussed the section of the legislative history providing that § 924(c) sentences must be imposed first. See Gonzales, 520 U.S. at 6-7. The Court stated that the legislative history was inconsistent with the statute and need not be followed. See id. at 6. ("This snippet of legislative history injects into § 924(c) an entirely new idea—that a defendant must serve the five-year prison term for his firearms conviction before any other sentences. This added requirement, however, is in no way anchored to the text of the statute.") (internal

4

citations and quotations omitted).

Under the Bureau of Prisons' new calculation, Mr. Harris first became eligible for parole on the § 2113 sentence on September 9, 1996 (almost five years earlier than he was eligible for parole on that sentence under the old method, when the § 924(c) sentence was served first). See Rec. doc. 2, Ex. 6 (Response dated Apr. 9, 1998). However, as the magistrate judge explained, "even if parole on that sentence was granted in September 1996, Mr. Harris would then have been required to serve the 5 year sentence. The earliest possible release date on the combined sentences was calculated to be May 16, 2000." Rec. doc. 41, at 3 (Magistrate's Recommendation, filed June 10, 1999).

Pursuant to the new method of sentence calculation, Mr. Harris received a parole hearing on his § 2113 sentence on December 10, 1998. The Parole Board decided that Mr. Harris should receive "a presumptive parole after the service of 188 months." Id. He would then begin to serve the five year § 924(c) sentence.

In June 1998, Mr. Harris filed the instant habeas petition in the United States District Court for the District of Colorado, where he is currently incarcerated. He advanced several challenges to the methods used to calculate his sentence. In particular, he argued that the Bureau of Prisons' pre-Gonzales method violated the Ex Post Facto Clause of the Constitution by extending his parole eligibility on the § 2113 charge beyond the date imposed by the sentencing

5

court, thereby improperly increasing the punishment for that charge. He further argued that the Bureau of Prison's recalculation of his sentence violated the Double Jeopardy Clause by requiring him to serve the five year § 924(c) sentence twice. Finally, he argued that because he did not receive a parole hearing until after the first date that he was eligible for parole under the new method of calculating his sentence (Sept. 1996), the Bureau also violated his rights under the Due Process Clause. The magistrate judge and the district court rejected all of Mr. Harris's claims.

## II. DISCUSSION

On appeal, Mr. Harris advances the same arguments as he did in the district court proceedings. He further argues that the district court erred in refusing to address his motion for summary judgment. Upon review of the record and the applicable law, we discern no error in the district court's analysis.

As to the Ex Post Facto Clause, Mr. Harris's argument is that the policy requiring the § 924(c) sentence to be served first improperly extended the date that he became eligible for parole on the § 2113 sentence. Mr. Harris maintains that because the Washington federal court intended the § 2113 sentence to be served before the § 924(c) sentence, he was first made eligible for parole in September 1996. However, the pre- Gonzales Department of Prisons policy, by

6

requiring him to serve the § 924(c) sentence first, extended the date of parole eligibility to March 2001.   By extending that date, Mr. Harris maintains, the Bureau of Prisons policy retroactively increased his sentence in violation of the Ex Post Facto Clause.

We are not persuaded by this argument.  The Ex Post Facto Clause precludes application of a retrospective act that inflicts "a greater punishment, than the law annexed to the crime, when committed," because such application implicates "the central concerns of the Ex Post Facto Clause:  the lack of fair notice and governmental restraint when the legislature increases punishment beyond what was prescribed when the crime was consummated."        Lynce v. Mathis , 519 U.S. 433, 441 (1997) (internal citations and quotations omitted). Although the Ex Post Facto Clause is a limitation on the powers of the legislature, the Due Process Clause imposes similar limits on retroactive increases in punishment imposed by the courts, including delays in parole eligibility.   See  Devine v. New Mexico Dept. of Corrections    , 866 F.2d 339, 344 (10th Cir. 1989).  However, only "unforseeable" expansions of criminal liability are prohibited.   See id. at 345.  Moreover, we have observed that Supreme Court decisions "point to  effect on actual prison time as the decisive factor in evaluating the constitutionality of retroactively applied changes in parole and sentencing laws."    Id. at 343 n.6.

7

Here, the Bureau of Prisons' pre- <u>Gonzales</u> policy of requiring § 924(c) sentences to be served first was neither unforseeable nor affected actual prison time. As we have noted, prior to <u>Gonzales</u>, a section of legislative history of the statute could be plausibly read to require § 924(c) sentences to be served first. Moreover, although the pre- <u>Gonzales</u> policy extended the date of Mr. Harris's first parole hearing, there is no indication here that the policy affected his actual prison time. We, therefore, conclude that the determination of Mr. Harris's sentence did not violate ex post facto principles under the Due Process Clause.

Mr. Harris's Double Jeopardy argument is similarly unconvincing. He maintains that because he had already served the § 924(c) sentence, the Bureau of Prisons punished him twice for the same offense by reversing the order of the sentences and requiring him to serve the § 924(c) sentence after the § 2113 sentence. Mr. Harris ignores the fact that initial five year period of his sentence has now been fully credited against his § 2113 sentence. Although Mr. Harris properly states the general rule that a court cannot reimpose a sentence once a defendant has fully served a lawful sentence for the crime, <u>see</u> <u>United States v. Silvers</u>, 90 F.3d 95, 101 (4th Cir. 1996), the cases on which he relies do not involve a mere reordering of consecutive sentences in which the defendant is credited with all the time he has served. Absent an increase in the aggregate term of imprisonment, the mere change in the order in which the consecutive sentences

8

are served does not constitute multiple punishment for the same offense.    See

United States v. Markus  , 603 F.2d 409, 414 (2d Cir. 1979).

Finally, Mr. Harris's due process challenge to the extension of the date of

his parole hearing also fails. As the district court observed, the failure to hold a

timely parole hearing does not violate due process unless the petitioner can show

prejudice by the delay.    See Nabors v. Warden, U.S. Penitentiary   , No. 92-3282,

1993 WL 55940, at * 2 (10th Cir. Mar. 1, 1993) ("[B]ecause [petitioner] has

already had his initial hearing and has shown no prejudice stemming from the

delay, he has already received the only remedy that he is due."). Here, although

Mr. Harris did not receive a parole hearing in September 1996 (the appropriate

date if the Bureau of Prisons had initially determined that the § 2113 sentence

should be served first), he did receive a hearing in December 1998. At that

hearing the Parole Board established a presumptive parole date on the § 2113

sentence (after the service of 188 months). Mr. Harris has failed to establish that

the Parole Board would have reached a different decision if the hearing had been

held earlier. [1]

III.  CONCLUSION

---

[1] Because the district court fully addressed the applicable legal issues in its order of dismissal, we further conclude that it did not err in refusing to address Mr. Harris's motion for summary judgment.

9

We therefore AFFIRM the judgment of the district court. [2]

Entered for the Court,

Robert H. Henry
Circuit Judge

---

[2] In light of our disposition of this appeal, Mr. Harris's Motion to Accelerate Briefing and Adjudication is moot.